IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

DIANNE S. JUSTICE                                                                                      PLAINTIFF

V.                                                            CIVIL ACTION NO. 1:15-CV-00136-NBB-DAS

RENASANT BANK, a/k/a/ RENASANT
CORPORATION, and HOZAY HAUSLEY                                                     DEFENDANTS

<u>MEMORANDUM OPINION</u>

Presently before the court is the defendants' motion for summary judgment. Upon due consideration of the motion, response, exhibits, and supporting and opposing authority, the court is ready to rule.

<u>Factual and Procedural Background</u>

The plaintiff, Dianne Justice, brings this action against her former employer, Renasant Bank, alleging violations under 42 U.S.C. § 12101 for claims arising under the Americans with Disabilities Act ("ADA") and the Americans with Disabilities Amendments Act ("ADAA"). She further alleges violations under 42 U.S.C. § 2601 for claims arising under the Family and Medical Leave Act ("FMLA").

Justice contends that were it not for her alleged disability, suffering from migraine headaches, Renasant would not have terminated her employment. Justice further contends that Renasant wrongfully interfered with her FMLA rights by not offering her FMLA leave due to her migraine headaches. Justice additionally asserts a claim against her former supervisor, Hozay Hausley, for malicious interference with employment.

Justice began working as a teller with Renasant in July of 1996. Her career with Renasant continued for approximately nineteen years as she held various positions, the last being Senior Lending Assistant under then Branch Manager, Hausley.

Justice alleges she has suffered from occasional migraine headaches since she was eighteen years old. Her medical records, however, are devoid of any mention of diagnosis or treatment of migraines. According to Justice, the migraines are completely debilitating, in that she cannot concentrate and cannot stand light, and the only remedy for her is to "get in a cold . . . dark room, cover [her] head with a pillow and try [to] sleep it off," but that she functions normally the next day.

In 2014, Justice took approximately five weeks of sick leave, most of which she alleges was due to migraines. She cannot, however, identify which of those days were taken for migraines and which of those were taken for other reasons. Justice further alleges that on many occasions when she called in sick, she informed Renasant she had a migraine.

In September of 2014, Hausley, along with Renasant employee Wilma McMillan, met with Justice to discuss her performance. In that meeting, Hausley noted her many absences and went on to ask whether there was anything he or Renasant could do to help. Justice provided no response. Instead, she conceded that on many of the days she had missed, she was actually able to come in, but did not because she assumed another employee could do her work.

Renasant chose to terminate Justice's employment on February 5, 2015. When Justice asked why she was being terminated, Stacy Crowley, Renasant's human resources representative, responded that it was due to a "questionable transaction."[1] The questionable transaction to which Crowley was referring was a loan taken out in the name of Justice's sister.

In December of 2013, Justice was struggling financially and her house had gone into foreclosure. Her sister, Tonia Montet, allegedly offered to take out a loan in her name to help

---

[1] Justice has represented to the court that when she was terminated, Renasant "would not give a reason at the time," and that when she asked Crowley why she was being terminated, that "Crowley told her that she did not have to give a reason and to get her stuff and leave." However, as evidenced in her Equal Employment Opportunity Commission ("EEOC") charge, and further confirmed by the defendants, Crowley responded by stating the termination was due to a "questionable transaction" of Justice's.

Justice make her delinquent mortgage payments. Justice then took action to secure a loan in Montet's name which Hausley ultimately approved. The parties, however, dispute whether Justice ever informed Hausley of the purpose of the loan.

During this process, Justice signed her sister's name to all loan documents. Though Justice alleges and Montet confirms that Montet gave Justice permission to sign her name, neither Justice nor Montet informed Hausley of these actions. When the loan proceeds check came in, Justice took the check, signed her sister's name on the back, and cashed the check. She then combined those proceeds with her own funds to make an official check to pay her mortgage. Though Justice and her sister contend she had permission to sign the check in this manner, no one informed Hausley nor obtained his authorization to do so.

In January of 2015, while Hausley was reviewing the weekly past-due report, he noticed that the aforementioned loan was on the list. He alerted Justice, and she told him that she would pass that information on to her sister. However, instead of informing her sister, Justice took out funds from her personal account and paid the loan off in full.

Hausley later reviewed the loan documents and, believing that the signatures were not Montet's, then passed the documents on to Renasant's human resources department for further review. After conducting an investigation, human resources determined that Justice had signed her sister's name to the loan documents and loan proceeds check without obtaining authorization from Renasant, and that she had directly benefitted from the loan proceeds. Based on this conclusion, Renasant believed that Justice had engaged in improper conduct which warranted termination.

Despite Renasant's articulated reason for her termination, Justice believed that she had been terminated because of her migraine headaches. Accordingly, she filed a charge with the

3

EEOC on February 23, 2015, and, after exhausting her administrative remedies, filed the instant suit. Renasant and Hausley now move for summary judgment and argue that Justice has failed to demonstrate the existence of a genuine issue of material fact.

Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant makes such a showing, the burden then shifts to the non-movant to "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. Further, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

When deciding a motion for summary judgment, the court must view the underlying facts in the "light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). As such, all reasonable inferences must be drawn in favor of the non-movant. *Id.* Before finding that no genuine issue for trial exists, the court must first be satisfied that no rational trier of fact could find for the non-movant. *Matsushita*, 475 U.S. at 587 (1986). "Summary judgment, although a useful device, must be employed cautiously because it is a final adjudication on the merits." *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989).

Analysis

In moving for summary judgment, Renasant contends that Justice cannot make out a prima facie case on either her ADA or FMLA claims. Additionally, Hausley asserts that Justice's

claim against him for malicious interference with employment fails because she has presented no evidence showing that he acted in bad faith.

*Plaintiff's ADA Claims*

Justice asserts that Renasant discriminated against her on the basis of her disability when it terminated her employment. The ADA provides that "no covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . discharge of employees." 42 U.S.C. §12112(a). To establish a prima facie case of discrimination under the ADA, Justice must prove (1) that she has a disability; (2) that she was qualified for the job; and (3) that she was subject to an adverse employment decision because of her disability. *LHC Group*, at 697 (citing *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 853 (5th Cir. 1999)).

Renasant first contends that Justice cannot show that she has a "disability." As it relates to this case, an individual has a "disability" if she has "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(a). Major life activities include "performing manual tasks, seeing . . . concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(a).

Renasant argues that Justice has not shown she has a disability only because she has failed to provide a "record of a diagnosis of, or treatment for, migraine headaches in any of her medical records." Although Renasant is factually correct, it fails to cite to any authority holding that such evidence is necessary to demonstrate the existence of a disability.

Justice presented deposition testimony from herself and her ex-husband Curry Justice, a nurse practitioner, in which they state that she has suffered from migraine headaches on and off since she was eighteen years of age and that these migraines worsened gradually over time. Moreover, Justice contends that the migraines render her "unable to perform manual tasks such

as walking, standing, speaking, breathing, concentrating, thinking, communicating, and working." Both Justice and her ex-husband testified that when she does have a migraine, it is completely debilitating to the point that she cannot function, cannot concentrate, cannot stand light, and the only remedy for her is to lie down in a cold, dark room and sleep it off. Renasant does not dispute these allegations. Based on this, the court is persuaded that Justice has demonstrated the existence of a disability for purposes of this summary judgment motion.

Renasant next contends that Justice cannot demonstrate that she was qualified for her job under the ADA. To be "qualified" under the ADA, Justice must demonstrate that, "with or without reasonable accommodation, [she] can perform the essential functions of the employment position that [she] holds or desires." 42 U.S.C. § 12111(8).

Renasant argues that Justice is not qualified because she undisputedly is unable to work when she has a migraine. "An essential element of any job is an ability to appear for work and to complete assigned tasks within a reasonable period of time." *Vanderford v. Parker Hannifin Corp.*, 971 F. Supp. 1079, 1081 (N.D. Miss. 1997) (quoting *Rogers v. International Marine*, 87 F.3d 755, 759 (5th Cir. 1996)). To be sure, "courts are in agreement that regular attendance is an essential function of most jobs." *Hypes on Behalf of Hypes v. First Commerce Corp.*, 134 F.3d 721, 727 (5th Cir. 1998) (citing *Rogers*, 87 F.3d at 759; *Tyndall v. Nat'l Educ. Centers, Inc. of Cal.*, 31 F.3d 209, 213 (4th Cir. 1994); *Law v. United States Postal Serv.*, 852 F.2d 1278, 1279-80 (Fed. Cir. 1988); *Walders v. Garrett*, 765 F. Supp. 303, 309-10 (E.D. Va. 1991); *Santiago v. Temple Univ.*, 739 F. Supp. 974, 979 (E.D. Pa. 1990)); *see also Howard v. North Miss. Medical Center*, 939 F. Supp. 505, 509 (N.D. Miss. 1996) (citing *Barfield v. Bell South Telecommunications*, 886 F. Supp. 1321, 1325 (S.D. Miss. 1995)).

Justice concedes that attendance is an essential function of the position at issue and that she was unable to attend when she suffered from a migraine. According to Justice, "just about every [migraine] would have been debilitating to where I had to lay [sic] down. I couldn't . . . stand light and I couldn't concentrate." To combat Renasant's argument, Justice merely asserts that "no employee would be expected to work when they were unable to do so because of an episodic disability," and that she "had worked for Renasant for over eighteen years," and "was an excellent employee when she was not having a migraine."

In essence, Justice contends that she is qualified by arguing that Renasant should not require her to work when she has a migraine, or, in other words, that Renasant should relieve her of the attendance requirement. Justice's argument fails, however, as "[t]he ADA does not require an employer to relieve an employee of any essential functions of his or her job." *LHC Group*, 773 at 698. Moreover, courts will not "say that [an employee] can perform the essential functions of the job with reasonable accommodation, if the only successful accommodation is for [the employee] not to perform those essential functions." *Barber v. Nabors Drilling U.S.A., Inc.*, 130 F.3d 702, 709 (5th Cir. 1997).

Justice additionally contends that Renasant violated the ADA in failing to provide her with a reasonable accommodation. Discrimination under the ADA includes an employer's failure to provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee." 42 U.S.C. § 12112(b)(5)(A).

Justice asserts that "Renasant could have offered [her] time off while she had a migraine. That would be [a] reasonable accommodation." But, "an employee who needs an accommodation because of a disability has the responsibility of informing her employer."

7

*E.E.O.C. v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009). Further, "where the disability, resulting limitations, and necessary reasonable accommodations are not open, obvious, and apparent to the employer, the initial burden rests primarily upon the employee . . . to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations." *Taylor v. Principal Fin. Grp.*, 93 F.3d 155, 165 (5th Cir. 1996).

Justice has presented no evidence demonstrating that she ever informed Renasant of her need for an accommodation. In fact, in the meeting held in September of 2014, when Hausley and Justice discussed her absences, Hausley directly asked her what he or Renasant could do to help, to which she gave no response. Justice was given the opportunity at that time to inform Hausley that she needed some sort of accommodation, but instead remained silent. Furthermore, Justice's deposition testimony contradicts her assertion that Renasant could have provided her with a reasonable accommodation. Justice testified, in pertinent part, as follows:

> Q. When you were suffering from a migraine headache what, if anything, could anybody at the bank do to accommodate that situation so that you could work?
>
> A. There was *nothing* really that you could do. I mean, laying [sic] down in a dark room was about it, and you can't really do that in your office.

And though Justice now asserts that Renasant should have offered her time off for her migraines, "no such requirement exists under the ADA" to reasonably accommodate an employee's leave of absence, as a "reasonable accommodation does not require [an employer] to wait indefinitely for [the employee's] medical conditions to be corrected." *Vanderford*, 971 F. Supp. at 1081 (citing *Rogers*, 87 F.3d at 759). And perhaps even more important, it is undisputed that Renasant allowed Justice to take off every single time she requested it. So,

assuming that leave was a reasonable accommodation under the ADA, Justice was in fact given such accommodation.

Based on the foregoing discussion, the court agrees that the plaintiff has failed to demonstrate that she was qualified for the job at issue or that the defendant failed to provide her with a reasonable accommodation. Accordingly, the court finds that Justice has failed to make out a prima facie case on her ADA claims.

*Plaintiff's FMLA Claim*

Justice argues that Renasant violated the FMLA by failing to offer her FMLA leave for her migraines. Justice's FMLA claim has five elements: (1) that she was an eligible employee under the FMLA; (2) that Renasant was an eligible employer; (3) that she was entitled to leave; (4) that she gave notice of her intent to take FMLA leave; and (5) that Renasant denied her FMLA benefits. *Lanier v. Univ. Tex. Southwestern Medical Center*, 527 F. App'x 312, 316 (5th Cir. 2013). The first two elements of Justice's claim are not in contention. Instead, Renasant contends that Justice was not entitled to leave, or, in the alternative, that she failed to give sufficient notice of her intent to take FMLA leave.

To be entitled to leave under the FMLA, an individual must have a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The term "serious health condition" means "an illness, injury, impairment, or physical or mental condition that involves . . . continuing treatment by a health care provider." 29 U.S.C. § 2611(11)(B).

"Continuing treatment by a health care provider" relevant to this case can mean one of two things. First, it may involve "a period of incapacity of more than three consecutive, full calendar days." 29 C.F.R. § 825.115(a). In the alternative, such continuing treatment may be

9

demonstrated by a showing of "any period of incapacity due to a chronic serious health condition." 29 C.F.R. § 825.115(c). A "chronic serious health condition" is one which "requires periodic visits (defined as at least twice a year) for treatment by a health care provider." 29 C.F.R. § 825.115(c)(1).

The court first points out that Justice has not directly alleged that she suffered from a serious health condition. That being said, even assuming the assertion were made, she has failed to provide the court with any evidence upon which to conclude that she has demonstrated such a condition within the meaning of the FMLA. Nothing in the record demonstrates that these migraines rendered her incapacitated for a period of more than three consecutive, full calendar days. In fact, by her testimony, Justice concedes that she is able to function normally the day following the migraine.

Additionally, Justice has presented no evidence demonstrating a "chronic serious health condition" in which she visited a health care provider at least twice a year for treatment. The only testimony given regarding visits and treatment came from the plaintiff and her ex-husband. Justice contended she had only been to her ex-husband's medical clinic on a few occasions and that she usually receives treatment via the telephone. She provided the court with no information concerning when these office visits took place or how often on a yearly basis they occurred. Her ex-husband merely testified that he believed he had treated her three to five times over the last four years. He gave no indication of whether these visits were office visits or mere telephonic visits, or how often these "treatments" took place within a yearly span. With this being the only evidence provided, the court concludes that Justice has failed to demonstrate that she has a "serious health condition" within the meaning of FMLA and, consequently, that she was not entitled to FMLA leave.

Even if the court were to find that Justice was entitled to FMLA leave, the court additionally finds that she failed to give Renasant sufficient notice of her intent, or need, to take FMLA leave. An employer's obligations under the FMLA are triggered either "when an employee requests FMLA leave or when the employer acquires knowledge than an employee's leave may be for an FMLA-qualifying reason." 29 C.F.R. § 825.300(b)(1).

Justice undisputedly did not request FMLA leave, so she contends that she gave Renasant sufficient notice for it to understand that she was entitled to and needed FMLA leave. "An employee giving notice of the need for FMLA leave does not need to expressly assert rights under the Act or even mention the FMLA to meet . . . her obligation to provide notice." 29 C.F.R. § 825.301(b). However, the employee does "need to state a qualifying reason for the needed leave." 29 C.F.R. § 825.301(b). The key inquiry is "whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973, 977 (5th Cir. 1998) (quoting *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 760 (5th Cir. 1995)). Whether given notice is sufficient depends upon the facts and circumstances of each individual case. *Manuel*, 66 F.3d at 764.

In arguing that she provided Renasant with sufficient notice, Justice points merely to the fact that she had taken sick leave, which she alleges Renasant knew, at least for some of those days, was due to her migraines. However, "calling in 'sick' without providing more information will *not* be considered sufficient notice to trigger an employer's obligations under the Act." 29 C.F.R. § 825.303(b) (emphasis added). Moreover, "while an employer's duty to inquire may be predicated on statements made by the employee, the employer is not required to be clairvoyant." *Satterfield*, 135 F.3d at 980. Further, "requiring an employer to undertake to investigate whether

FMLA-leave is appropriate each time an employee . . . informs the employer that she will not be at work 'that day' because she is . . . 'sick,' is quite inconsistent with the purposes of the FMLA . . . and would be unduly burdensome for employers." *Id.* at 981. Because Justice has shown nothing more than that she called in sick on occasion and that she allegedly informed Renasant (on some days) that she was having a migraine, the court finds that she failed to provide the defendant with sufficient notice of the need for FMLA-qualifying leave.

In sum, the court agrees with the defendant that Justice has failed to show that she was entitled to FMLA leave and that she failed to provide Renasant with sufficient notice that she was in need of FMLA-qualifying leave. Consequently, the court finds that Justice has failed to make out a prima facie case on her FMLA claim.

*Plaintiff's Malicious Interference with Employment Claim*

Lastly, Justice asserts that Hausley is liable for the tort of malicious interference with employment. Under Mississippi law, "one who intentionally and improperly interferes with the performance of a contract between another and a third person by inducing or otherwise causing the third person not to perform the contract" is liable for tortious interference with a contract. *Levens v. Campbell*, 733 So.2d 753, 760 (Miss. 1999). Essentially, Justice contends that Hausley interfered with the employment relationship between her and Renasant via his role in her termination.

Hausley argues that he cannot be held liable for such actions because of the position he held with Renasant at the time of Justice's termination. It is true, as Hausley contends, that "one occupying a position of responsibility on behalf of another is privileged, within the scope of that responsibility and absent bad faith, to interfere with his principal's contractual relationship with a third person." *Id.* (citing *Shaw v. Burchfield*, 481 So.2d 247, 255 (Miss. 1985)). Justice

concedes this point but argues that Hausley can be held liable because, she alleges, he acted in bad faith. In arguing that Hausley acted in bad faith, Justice first notes that Hausley investigated the suspicious loan transaction involving her sister. She also emphasizes that Hausley ultimately recommended that Justice's employment with Renasant be terminated.

The court is unpersuaded by Justice's arguments. Merely initiating the investigation into the suspicious loan does not constitute bad faith. Hausley was simply doing his job when he noticed a transaction that seemed to raise some red flags. Even Justice admitted that anyone looking at the loan documentation would fairly assume that there was no indication that her sister had even been aware of the loan. Moreover, Hausley only *initiated* the investigation and Justice's termination was not based on his investigation alone. Instead, Hausley properly turned over the documentation to Renasant's human resources department which then conducted its own investigation and determined that Justice had signed her sister's name to all loan documents and had benefitted from the proceeds.

Additionally, undisputed testimony shows that Hausley alone did not make the recommendation to terminate Justice's employment. Instead, that recommendation was made jointly by Hausley and his supervisor Carter Naugher, who then left the decision up to human resources, and such decision was ultimately approved by Scott Cochran, the President of Renasant's Western Region. For these reasons, the court finds that Justice has failed to put forth sufficient evidence to show that Hausley acted in bad faith. Accordingly, the court concludes that Justice's claim for malicious interference with employment fails.

<u>Conclusion</u>

Based on the foregoing discussion, the court finds that the defendants' motion for summary judgment is well-taken and should be granted. A separate order in accord with this opinion shall issue this day.

This, the 8th day of November, 2016.

/s/Neal Biggers
**NEAL B. BIGGERS, JR.**
**UNITED STATES DISTRICT JUDGE**